| | |
|---|---|
| DISTRICT COURT, CITY & COUNTY OF DENVER, STATE OF COLORADO<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED: September 13, 2017 5:28 PM<br>FILING ID: 34BCE96EE5F57<br>CASE NUMBER: 2017CV33426 |
| **KELLY BOHM**, an Individual<br><br>     Plaintiff,<br><br>v.<br><br>**MEDIX STAFFING SOLUTIONS, INC**, a Corporation<br><br>     Defendant. | ▲ **COURT USE ONLY** ▲ |
| Attorneys for Plaintiff:<br><br>Matthew J. Cron, #45685<br>Qusair Mohamedbhai, #35390<br>RATHOD \| MOHAMEDBHAI LLC<br>2701 Lawrence Street, Suite 100<br>Denver, CO 80205<br>(303) 578-4400 (t) / (303) 578-4401 (f)<br>mc@rmlawyers.com / qm@rmlawyers.com | Case No:<br><br><br>Division: |
| **COMPLAINT** | |

Plaintiff Kelly L. Bohm ("Plaintiff" or "Ms. Bohm"), by and through counsel Matthew J. Cron and Qusair Mohamedbhai of RATHOD \| MOHAMEDBHAI LLC, respectfully alleges for her Complaint as follows:

## I.  INTRODUCTION

1.      This action arises under the Colorado Uniform Jury Selection and Service Act (CUJSSA), C.R.S. § 13-71-134.

2.      Ms. Bohm was a pharmaceutical representative employed by Medix Staffing Solutions, Inc. ("Medix"). In September 2016, Ms. Bohm received a summons to report for jury service beginning on October 3, 2016. Ms. Bohm was selected to serve as a juror in a violent sexual assault case. Due to the sensitive nature of the case, the jury was sequestered.

## **EXHIBIT B**

3. Ms. Bohm informed Medix of her jury duty and logged her absences in the proper time-keeping system. Yet, Ms. Bohm's supervisor, Danny Farr, continually attempted to contact Ms. Bohm and grew increasingly angry when she informed him that she remained sequestered.

4. Ms. Bohm eventually told the presiding judge, Denver District Court Judge Martin E. Egelhoff, that she was concerned her employment was in jeopardy due to the increasingly hostile communications from Mr. Farr. Judge Egelhoff then contacted a representative of Medix to inform them of the CUJSSA.

5. When Ms. Bohm returned to work she experienced swift and severe retaliation. Just a few days after returning to work, Ms. Bohm was told that she was not allowed to attend a quarterly business meeting that she had previously been scheduled to attend and was open to the rest of her team. She was told that she could not attend this crucial networking meeting because she was a legal endangerment to Medix due to her complaints about Mr. Farr.

6. Despite her exclusion from the meeting, Ms. Bohm was assured that she was doing a great job and that her employment was not at risk.

7. Two days later, Ms. Bohm was terminated. No explanation was provided.

## II. PARTIES, JURISDICTION, AND VENUE

8. At all times relevant hereto, Ms. Bohm was a legal resident of and domiciled in the State of Colorado.

9. Defendant Medix Staffing Solutions, Inc. ("Medix" or "the company") does business in the State of Colorado. Its registered agent of service in Colorado is located at 1560 Broadway, Suite 2090, Denver, CO 80202.

10. The Court has jurisdiction over this matter pursuant to C.R.S. § 13-1-124, as the alleged commission of tortious acts occurred within the State of Colorado. This action is specifically authorized by the Colorado Uniform Jury Selection and service Act, C.R.S. § 13-71-134, and the Colorado Wage Act, C.R.S. §§ 8-4-101, *et seq*.

11. Venue is proper in this Court pursuant to C.R.C.P. 98. This action alleges tortious and other unlawful conduct that occurred in the City & County of Denver. Additionally, Defendant Medix does business in and avails itself of the commerce of the City & County of Denver.

12. The amount in controversy exceeds one hundred thousand dollars, exclusive of interest and costs.

**EXHIBIT B**

## III. FACTUAL ALLEGATIONS

**Ms. Bohm Brought Outstanding Experience to Medix, Where She Continued to Excel**

13. Prior to joining Medix, Ms. Bohm enjoyed a long and distinguished career as a sales representative for pharmaceutical products.

14. During previous employments, Ms. Bohm earned numerous sales awards, increased her client base, and consistently ranked among the top salespersons at various companies.

15. Over her years of selling pharmaceuticals, Ms. Bohm gained expert knowledge in the areas of respiratory health, cardiology, blood thinning, oncology, women's health, pain management, and neurology.

16. On May 6, 2016, Ms. Bohm accepted an offer employment with Medix on assignment with Medix's client UCB, as a Neurology/CNS Sales Specialist selling Neupro, a prescription medicine used to treat symptoms of Parkinson's disease and restless leg syndrome.

17. In addition to her annual salary, Ms. Bohm was eligible for an annual bonus of $20,000.

18. As she had done at every step of her career, Ms. Bohm shined. During training, Ms. Bohm achieved a perfect score on a written examination about the Neurpro product.

19. Ms. Bohm's experience, tenacity, and exemplary work effort helped her achieve strong sales numbers during her time at Medix.

20. Ms. Bohm never received any discipline, let alone warnings, about her performance while she was employed by Medix.

**Ms. Bohm Was Selected for Jury Service, Drawing the Ire of Her Supervisor Danny Farr**

21. In September 2016, Ms. Bohm received a summons to report for jury service on October 3, 2016 in Denver District Court.

22. Ms. Bohm promptly informed her supervisors that she had to report for jury service on October 3, 2016. Additionally, Ms. Bohm documented her need for jury service in the time-keeping Vision system, which her supervisors could access.

23. On October 3, 2016, Ms. Bohm was selected to serve on the jury in a violent sexual assault case over which Denver District Court Judge Martin E. Egelhoff presided.

24. Due to the sensitive nature of the case, the jury was sequestered and forbidden from bringing cell phones into the jury room.

# **EXHIBIT B**

25. After the trial began, Ms. Bohm's direct supervisor, District Manager Danny Farr, began calling Ms. Bohm frequently on her cell phone. On October 7, 2016, Mr. Farr called Ms. Bohm three separate times while she was sequestered.

26. Ms. Bohm had verbally informed Mr. Farr when she was selected for jury duty. Mr. Farr also had access to the Vision system in which Ms. Bohm had documented that she was on jury duty.

27. When Ms. Bohm asked Mr. Farr via email if he could tell her what he needed, he responded that he needed to speak with her and that it was "imperative."

28. On Saturday, October 8, 2016, Ms. Bohm responded by email as follows: "As you know, I have been and am serving in a jury trial. Can you let me know what you need by email? We are not allowed to bring cell phones into the jury room."

29. On Monday, October 10, 2016, Mr. Farr asked Ms. Bohm whether she was "sequestered." She responded "yes" the next day.

30. On Tuesday, October 11, 2016, after Ms. Bohm reiterated her request to be contacted via email, Mr. Farr responded that "[y]our conduct is less than professional and this is not how we conduct ourselves. We had to cancel 2 conference calls to discuss what you have been pleading for in the past. For you to be silent and have no contact, is not acceptable."

31. Ms. Bohm responded via email message that Mr. Farr sounded "like an angry man who plans to discipline/fire me."

32. Later on October 11, 2016, the jury rendered a verdict.

33. After the jury was released, Ms. Bohm informed Judge Egelhoff that she was concerned about her employment security due to Mr. Farr's increasingly hostile email messages.

34. Ms. Bohm provided Judge Egelhoff with contact information for Medix. Judge Egelhoff then spoke with a representative of the Medix Human Resources department.

35. Judge Egelhoff informed the Medix representative of the Colorado law that prohibited an employer from retaliating against an employee for serving on a jury.

36. On Wednesday, October 12, 2016, Ms. Bohm returned to work.

4

**EXHIBIT B**

**Ms. Bohm Complains About Mr. Farr's Interference with Her Jury Service, Resulting in Her Exclusion from an Important Three-Day Business Conference**

37. After returning to work, Ms. Bohm contacted the Medix Human Resources Office to discuss her concerns with Mr. Farr's conduct while she was on jury duty.

38. Ms. Bohm was told by Medix Recruitment Advisor (and her supervisor) Edmond "EK" Kybartas that Mr. Farr would not be contacting Ms. Bohm for the time being.

39. On Thursday, October 13, 2016, Ms. Bohm informed Ms. Steiger that Mr. Farr was requesting that she call him, even though she had just been told that he would not be contacting her while the investigation was pending. She stated that she did not feel comfortable speaking with Mr. Farr without first resolving their issues.

40. Ms. Bohm also informed Ms. Steiger that she had entered her jury duty system in the Vision time-keeping system, which is how she had been trained to inform management that she would be off work. Ms. Bohm also reminded Ms. Steiger that a judge had called Mr. Farr and Ms. Steiger, which confirmed her jury service. On Ms. Steiger's request, Ms. Bohm also provided her jury summons.

41. In response, on October 14, 2016, Ms. Steiger thanked Ms. Bohm for sending her jury duty documentation. Ms. Steiger informed Ms. Bohm that Medix had "zero intention to terminate [her] employment after [her] jury duty last week . . . ."

42. Ms. Steiger also stated that "[t]he decision to terminate any Medix employee is ultimately made by the Medix Human Resources team in conjunction with your Medix supervisors, EK [Kybartas] and Dan D., not by Danny Farr."

43. In a subsequent email on Friday, October 14, 2016, Ms. Steiger stated that "Danny [Farr] and EK called you during jury duty because they were not aware that you were still serving jury duty. They may have known and just forgotten, or maybe they did not know at all." Ms. Steiger then stated that Mr. Farr and Mr. Kybartas had been contacting Ms. Bohm because they were concerned about Ms. Bohm's "safety and well-being."

44. Ms. Bohm had expressly informed both Mr. Farr and Mr. Kybartas that she was on jury duty.

45. On Tuesday, October 18, 2016, Ms. Bohm was told to call Mr. Kybartas. Expecting to talk to just Mr. Kybartas, Ms. Bohm was surprised to learn that her other supervisor, Dan Dumrauf was also on the phone.

46. Messrs. Kybartas and Dumrauf told Ms. Bohm that she could not attend a three-day business meeting that was scheduled to begin the next day in Dallas, Texas.

47. Ms. Bohm had been planning to attend the Dallas meeting, which was attended by other Medix sales representatives and representatives of UCB.

**EXHIBIT B**

48. By prohibiting Ms. Bohm from attending the meeting, Messrs. Kybartas and Dumrauf deprived Ms. Bohm of networking opportunities and training that were available to her colleagues, putting her at an extreme disadvantage.

49. When Ms. Bohm asked why she could not attend the meeting, Mr. Dumrauf informed Ms. Bohm that she could not attend the meeting because she was a legal endangerment to Medix. Mr. Dumrauf further stated that it was Ms. Bohm's own fault that she could not attend, referring to Ms. Bohm's complaints about Mr. Farr's interference with her jury service.

**Ms. Bohm is Terminated Two Days After Being Repeatedly Assured of Her Job Security**

50. After ending the conference call, Mr. Kybartas called Ms. Bohm back later on October 18, 2016 and spoke with her one-on-one.

51. Mr. Kybartas first apologized for blindsiding Ms. Bohm by having Mr. Dumrauf on the conference call.

52. Mr. Kybartas stated that Ms. Bohm's exclusion from the meeting had nothing to do with her job performance.

53. Mr. Kybartas stated that he wanted to make it 100 percent clear that Medix was not firing Ms. Bohm.

54. Mr. Kybartas stated that Medix did not have to be completely transparent with UCB Senior District Sales Manager Michael Leake regarding Ms. Bohm's absence from the Dallas meeting.

55. Ms. Bohm stressed that it was important for her to attend the Dallas meeting. Mr. Kybartas agreed that it was important.

56. Mr. Kybartas stated that Medix had Ms. Bohm's back and it was Medix's job and responsibility to make sure that Ms. Bohm had the same opportunities as everybody else.

57. Mr. Kybartas stated that from the moment Medix hired Ms. Bohm, her job had never been in question.

58. Mr. Kybartas stated that Medix had received a lot of positive feedback about Ms. Bohm, that she was really grinding, putting her head down, and taking charge with a lot of things.

59. Mr. Kybartas stated that Ms. Bohm's hard work had not gone unnoticed and that her hard work was passed on to upper management.

60. Mr. Kybartas stated that Ms. Bohm's frustration with Mr. Farr's interference with her jury service got more attention when the judge reached out.

**EXHIBIT B**

61. Mr. Kybartas further stated that the judge talking about the potential of criminal charges against Mr. Farr became a liability for everyone involved and that phone call was the moment when things started to escalate.

62. When Ms. Bohm stated that she did not want to lose her job, Mr. Kybartas said she was not losing her job and that it was never in question. He stated that there was no reason to even talk about her job being in jeopardy.

63. The next day, Wednesday, October 19, 2016, Mr. Kybartas sent an email message to Ms. Bohm informing her that Medix would not reconsider its decision to prohibit Ms. Bohm from attending the Dallas meeting.

64. In his email message, Mr. Kybartas stated that he was confident that Ms. Bohm's absence from the Dallas meeting would have no long-term fallout with Medix or UCB and that her absence from the meeting would not affect her employment status in any way, shape, or form.

65. The very next day, Thursday, October 20, 2016, Mr. Kybartas sent an email attaching "an important document concerning your employment Medix."

66. The "important document" was a notice of termination.

67. The notice of termination did not contain any reason for the termination.

68. Medix has never provided Ms. Bohm with a reason for her termination.

69. Despite extremely diligent efforts, Ms. Bohm has been unable to find employment.

**Medix Further Retaliated Against Ms. Bohm by Unlawfully Withholding Part of Ms. Bohm's Third Quarter Bonus**

70. During a team conference call, Mr. Farr had informed all team members that they would each receive the full quarterly bonus of $5,000 for their work during the months of July, August, and September.

71. When she was terminated on October 20, 2016, Ms. Bohm had not received her bonus payment.

72. When Ms. Bohm inquired about her bonus on November 3, 2016, she was told that her third quarter numbers were still being finalized and that she would receive payment soon.

**EXHIBIT B**

73. On December 5, 2016, Ms. Bonus was informed that she would only be paid $2,500, half of what she had earned and approximately forty-five days after she had been terminated.

74. On April 2, 2017, Ms. Bohm submitted a formal wage demand for the $2,500 in accordance with Title 8, Article 4 of Colorado Revised Statutes, as amended.

75. As of the date of this Complaint, Medix has not responded to Ms. Bohm's wage demand, exposing it to the penalties as provided by C.R.S. §§ 8-4-109 and 8-4-110.

## IV. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Violation of C.R.S. § 13-71-134)

76. Plaintiff hereby incorporates all the paragraphs of this Complaint as though fully incorporated herein.

77. Defendant Medix violated C.R.S. § 13-71-134 when it deprived Ms. Bohm of her employment and the incidents or benefits thereof by terminating her.

78. Defendant Medix violated C.R.S. § 13-71-134 when it harassed, threatened, or coerced Ms. Bohm because she performed her civic obligation to serve as a trial juror.

79. Mr. Farr's demands that Ms. Bohm contact her while she was sequestered violated C.R.S. § 13-71-134 by substantially interfering with Ms. Bohm's ability to effectively perform her juror service.

80. Defendant Medix violated C.R.S. § 13-71-134 when it terminated Ms. Bohm for her jury service and her inability to communicate while sequestered. Defendant Medix also violated C.R.S. § 13-71-134 by retaliating against Ms. Bohm for complaining about her supervisors' interference with her jury service.

81. Defendant Medix's violations of C.R.S. § 13-71-134 was willful.

82. Ms. Bohm is entitled to recover treble damages and attorney fees as a result of Defendant Medix's willful violations of C.R.S. § 13-71-134.

### SECOND CLAIM FOR RELIEF
### (Colorado Wage Act, C.R.S. §§ 8-4-109, 110)
### (Against Defendant Medix)

83. Plaintiff incorporates all the paragraphs of this Complaint as though fully incorporated herein.

**EXHIBIT B**

84. By agreeing to hire Ms. Bohm, Defendant Medix entered into an employment contract with Ms. Bohm.

85. Under the employment contract, Ms. Bohm was to provide services in exchange for payment and Defendant Medix controlled when, where, and how Ms. Bohm worked.

86. As part of her compensation, Ms. Bohm was eligible to earn bonus payments.

87. Ms. Bohm earned a $5,000 bonus payment for her performance in the third quarter of 2016.

88. Defendant Medix has paid Ms. Bohm only $2,500 of the $5,000 that Ms. Bohm earned.

89. Defendant Medix did not respond to Ms. Bohm's formal wage demand for the unpaid $2,500.

90. Defendant Medix is therefore liable to Ms. Bohm for her unpaid bonus, reasonable attorney's fees, and costs.

91. Defendant Medix is additionally liable to Ms. Bohm for statutory penalties pursuant to C.R.S. § 8-4-109.

**WHEREFORE**, Ms. Bohm respectfully requests that the Court enter judgment for the following relief:

   a. All declaratory relief and injunctive relief, as appropriate;

   b. Actual economic damages as established at trial;

   c. Compensatory damages, including, but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

   d. Punitive damages for all claims as allowed by law, in an amount to be determined at trial;

   e. Liquidated damages for all claims as allowed by law;

   f. Penalties for all claims as allowed by law, in an amount to be determined at trial;

   g. Pre-judgment and post-judgment interest at the highest lawful rate;

   h. Attorneys' fees and costs; and

**EXHIBIT B**

      i.      Such further relief as justice requires.

DATED this 13th day of September, 2017.

RATHOD | MOHAMEDBHAI LLC

*s/ Matthew J. Cron*
Matthew J. Cron
Qusair Mohamedbhai
2701 Lawrence Street, Suite 100
Denver, CO 80205
(303) 578-4400 (t)
(303) 578-4401 (f)
mc@rmlawyers.com
qm@rmlawyers.com

ATTORNEYS FOR PLAINTIFF

10

# **EXHIBIT B**